. Thank you. Judge Timkovich and may it please the court, I'd like to reserve three minutes for rebuttal. One central fact. Please identify yourself. Sorry. Riaz Kanji. Thank you. For the Muskogee Creek Judicial Officers. One central fact informs the proper resolution of this case on August 8th.       Since this case was last year and as a result of the exhaustion of tribal court remedies ordered by this court, the Muskogee Creek Nation courts have ceased to exercise any form of jurisdiction over the tribal town. In the Muskogee Creek Nation District Court dismissed one of the two pending cases against the town in May of 2021, a decision which the Muskogee Creek Nation Supreme Court affirmed in early 2022. And in that same opinion, the Muskogee Creek Nation Supreme Court ordered the second of the two pending cases dismissed as well. So as a result, there are now no cases pending or impending in which the Muskogee Creek Nation Judicial Officers are asserting any form of authority over the tribal town. Which means that the court below should have dismissed this federal action for either one of two independent reasons. First, because the Muskogee Creek Nation Judicial Officers enjoy sovereign immunity from the town's federal suit. In 2014, this court properly recognized that the suit could proceed under Ex parte Young because at that time, the town alleged an ongoing violation of federal law in the form of the assertion of judicial jurisdiction over it. But now that key jurisdictional fact has changed and the basis for Ex parte Young jurisdiction has evaporated. Would you agree that the 2014 decision was the understanding that we had there was it was about the injunctive relief claim? I think it spoke largely to the injunctive relief claim. It also applied to the claim for declaratory relief in that you can state a viable claim for a declaratory relief under Ex parte Young if you are alleging an ongoing violation of federal law. So why isn't the component that we didn't speak to so robustly in the 2014 case, the declaratory relief claim, which is the central claim here, still alive? Because the claim for declaratory judgment relief, if I understand the question, that is governed by the same principles, whether we're talking about Ex parte Young or mootness, and I'll take those in turn. Under Ex parte Young, in order for the district court to issue a valid declaratory judgment, that judgment has to be speaking to an ongoing violation of federal law. Once there is no longer the actual or imminent threat of a violation of federal law, there is no basis for carving out an exception to the judicial officer's sovereign immunity. At that point, they're fully cloaked in the nation's sovereign immunity. When the judicial officers cease to exercise jurisdiction in 2022, there is no other allegation of a violation of federal law that the tribal town has stated. Nowhere in its complaint can you find any allegation of a violation of federal law other than the exercise of jurisdiction over the town. So it seems to me like that the Ex parte Young argument and the exception to mootness voluntary cessation kind of dovetail in the sense that the argument is that, yeah, you dismiss this action and you're no longer exercising jurisdiction over us again. But you haven't said that you recognize that we have the ability to withdraw a waiver of sovereign immunity. We have to use your courts because we don't have our own courts and we don't have any comfort that you're not going to do the same thing again as new cases arise. So that could fall under an exception to mootness, which is the voluntary cessation when and the burden, by the way, is on the person who ceases to prove that there's no risk that it's going to happen again. And it also brings in sort of the Ex parte Young, because if you have this concern about your jurisdiction, exercising jurisdiction over you when you have immunity, that would be a federal question. So that's a long question, but hopefully you understand it. I definitely understand there's a lot packed into that. So I will do my best to unpack each step. First, on the voluntary cessation exception, the key there is that exception applies when there's been a unilateral action taken by the defendant for the purposes of evading jurisdiction, for creating mootness. And those conditions don't apply here. First, the Muscogee Creek courts not engaged in any unilateral action. They exercised their responsibility to decide the case pursuant to an order from this court that tribal court remedies be exhausted. And they decided the case in front of them at the behest of the parties to the case. So there's no unilateral action, and that's what this court has talked about in the Washburn University case, for example. That's one of the requirements. Well, I mean, they dismissed the case. Found it moot. Absolutely, Your Honor, but they dismissed the case because they examined whether there was a basis for the continued exercise of jurisdiction, and they found that there wasn't. So they were exercising their judicial responsibilities, and I think they were being very responsible in doing it. Okay, also, I mean, their order is kind of a little difficult to follow, at least for me. It looks like they affirmed the tribal district court's finding that you couldn't withdraw your waiver. Well, I think they ultimately, and I understand what you're saying about how they addressed that issue. They ultimately left it open, and that's what Mr. Salem himself has said in his briefing. The district court, the tribal district court, the holding of the district court was that the case was no longer justiciable as a practical matter, which I think is essentially a form of saying it's prudentially moot. And then the Muscogee Creek Nation Supreme Court affirmed that holding and really limited its decision to that. And, of course, deciding a case on justiciability grounds is a perfectly permissible way to resolve a case. They resolved it on jurisdictional grounds so there was no longer a life case or controversy. And as a result, the courts are no longer exercising any jurisdiction over the town. Now, the other part of your question was you said, well, that leaves this issue about, well, what happens in the future if the town waives its immunity and then seeks to withdraw its immunity? And that was the basis on which the court below here found the case to not be moot. But I'll address that. But it did it on a different exception. It did it capable of repetition but evading review, right? Well, I think the district court here said two things. First, the case is not moot. The district court said it's not moot because there's a live case was the phrase that the district court used because there's still this issue out here. But that was fundamental error for several reasons. First, as this court has said, it said it in the Park County case, for example, almost any time that a case is dismissed for mootness, there are issues left to be resolved. But they're left to be resolved in future cases. The case or controversy requirement means they cannot be resolved in the instant case when the case or controversy has disappeared. But wasn't the issue that was left unresolved here the whole case at the end of the day? Well, no, I don't think so, Your Honor. Respectfully, there were a lot of issues packed into this litigation over time. There was a question about – No, I'm talking about just the withdrawal, the ability to withdraw consent was at the heart of the jurisdictional challenges. Was it not? I would say fairly it was one of several key issues. There were issues about whether the Lapides rule, the rule that once you invoke the jurisdiction of a court, in federal court, of course, the rule is that once you invoke the jurisdiction of a court, if you're a state, for example, whether you can withdraw that in fairness and equity. So there was that issue. There was the issue about whether the counterclaims fell within the scope of the case as it was brought. There was the issue originally about even – What about Anderson 2, isn't it? Sorry? Is that Anderson 2, whether the counterclaims fell within the scope, whether an election issue would be within the initial waiver of sovereign immunity? It was Anderson 2. It was also Anderson 1 because in Anderson 1 there were counterclaims brought by Mr. Anderson about the election issues itself. There were issues about who properly spoke for the town. So there was actually an awful lot for the tribal courts to work through. But I think the key is this. In the Schell v. Oxy case, this court in 2016 said that the possible effects of a judgment on hypothetical, unfiled future litigation are not a legally cognizable interest that will defeat mootness. And that's the only claim that the town has here is to evade mootness, which is, as the panel said, the town is claiming, well, in the future there might be a case, and think about all the causal links in this change, there might be a case where we go into the Muscogee Creek courts, we waive our immunity, we then withdraw that waiver at some later point in time, and the courts refuse to honor that waiver. But the hypothetical future case, an exception to that is the voluntary cessation exception. So if we were to say, geez, you know, the tribal courts were really kind of jerking around these people, five-year delay in the district court, and then it finally gets after we say we could really use some help on this, goes to the Supreme Court, and the Supreme Court says, ah, it's moot, and doesn't decide the issue, we might look at that and say, you know what, that might be a little bit suspicious. And it's the only court they have. And so if they ever want to be a plaintiff in that court, they're going to have to waive. But if a case presents itself in a way that they want to withdraw the waiver, they have a fear of it repeating. So let me address several aspects of that, please. First, as a factual point, this notion that it's the only court they have, it goes to the speculative nature of all this. The town could certainly establish its own court system. In fact, in 2009, the town enacted a judicial code and set up a court system, and that's referenced in footnote 59 of the Muscogee Creek Nation Supreme Court opinion. The town has chosen not to fund that court. It certainly could, and the town has all manner of business enterprises. It could fund the court. The Alabama Casarde town, which is one of the other similarly situated Muscogee Creek towns that is federally recognized, it has its own court system. So it's certainly not the case that as a factual legal matter that the only recourse for the town is to come into the Muscogee Creek courts. And when we're talking about speculativeness, whether they establish their own court system or whether they continue to use the Muscogee Creek court system, no one can say. And that's part of this. Secondly, and this is very important, the delay point, I want to speak very strongly to this. I do not think it is fair to say that the Muscogee Creek courts have engaged in any form of sham here to evade jurisdiction. The delay was extremely unfortunate, and the Muscogee Creek courts have addressed the root cause of that delay. When the case was remanded by this circuit in 2014, it was assigned to a district court judge who unfortunately, and this happens sometimes, just sat on the case. And several years passed, and that was inexcusable. But when the Muscogee Creek Supreme Court, in the exercise of its supervisory authority, became aware of the situation, it first urged that district court judge to decide the case. When it became clear that that was not going to happen, it reassigned the case to a different district court judge. That reassignment took place in November of 2020. By May of 2021, that district court judge had issued her decision and then certified the case for interlocutory appeal. The Muscogee Creek Supreme Court accepted the interlocutory appeal, and by February 28th of 2022, had issued its decision. And on remand, one week later, the district court dismissed both cases. So this was a normal course of events, right? Because that's what you're arguing, that voluntary cessation wouldn't apply unless there was some unilateral action, which we can't find here. That's exactly what I'm saying. And that's the phrase that's used in this course Washburn University case, where it says if things happen in the normal course of events, like a court issuing a decision, the voluntary cessation exception does not apply. It's not unilateral. The court here did it. Could the Muscogee Court refuse to hear a town case? Yes, it could, Your Honor. And it's interesting, because there was a lot of debate within the Muscogee Creek Court system about whether it should even entertain this case. And originally, the Muscogee Creek District Court had ruled, no, you know what, this is a matter of town law. I don't want to have anything to do with this case. What's the town do if the Muscogee refuses to take a case? Well, look, this is my personal opinion, but I think what the town should do is the town is a federally recognized tribe. It should have its own court system that's part of exercising sovereignty. And it's done a lot of the spade work for that. Simply a question of funding the system. Thank you, counsel. Your time has expired. Mr. Salem? Good morning. May it please the Court, I'm Michael Salem. I represent the Toplaco tribal town. This case involves an important question for Toplaco, and that's an intrusion upon its sovereignty by the Creek Nation courts. It's important enough that six members of the ten members of the Toplaco tribal town business committee have traveled to attend this hearing, and they're seated here in the courtroom. As Justice O'Connor in the three affiliated tribes versus Wold said, the common law sovereign immunity possessed by a tribe is a necessary corollary to Indian sovereignty and self-governance. Respectfully, contrary to my friend's assertion, this case is not moot. Just because the Creek tribe says that they're no longer exercising jurisdiction over Toplaco doesn't mean that this case is moot for that circumstances. And in addition to that, they made an assertion and it was repeated that in the amended complaint that there was no reference to the ability to withdraw the complaint or to withdraw the consent that Toplaco entered into. I might say that it's in their appendix and in page 67 of the claims, it says Toplaco is entitled to sovereign immunity as a Creek tribal town. On page 68, Toplaco's withdrawal of consent, and that issue is raised, and that was part of the issue, and so therefore any consideration that this was not part of the case would be incorrect. In fact, in the claims, Toplaco said we want to enjoin the exercise of jurisdiction once Toplaco had withdrawn its consent. I might say that in the previous case, in 2013, when we argued this court's decision in 2014, this was an important topic. I mean, it's not exactly like there was some kind of dispute over what that is. Why can't that issue be fully litigated in a future case where we have a live controversy? Well, first of all, the question is whether Toplaco raised it. First of all, if Toplaco has raised it. And second, does Toplaco have standing? The district court found that this was a live case because the question for Toplaco is, before they go into the Muscogee Creek Nation and try to litigate this particular issue, they're burdened by the rule of decision that the Creek Nation has already asserted, that Toplaco cannot withdraw its consent under their procedure rules. And so that is part of a live case. I'm sorry. There is an issue with the underlying merits decision of whether you can withdraw your waiver of sovereign immunity that is very fact specific. If I look at our case law and the case law generally, whether you can withdraw your waiver of sovereign immunity in this case may be very different than whether you can withdraw it in the next case because it's very much dependent upon those circumstances. How long has the case been being litigated? Are you withdrawing your waiver of sovereign immunity because it looks like you're going to lose and you're trying to gain the system? Because if you look at the case law, it's a very fact specific decision. So I'm not really sure that you can get a ruling that is a black and white ruling whether, yes, you can withdraw it once you've given a waiver or no, you can't. How do we deal with that? Well, the district court judge certainly thought that Toplaco's action in meeting the standards for the declaratory judgment under the Moon case did not think that there was any kind of fencing or the other five factors that were involved. And so I think what's clear is that if Toplaco had standing, for example, to bring a new case, and in reality these are the same facts that existed in this case at the time. I think we're miscommunicating. I'm sorry. My point, your point is it's not moot because giving us an answer on this question could govern how we behave in the future. And if you don't give us an answer, it might actually chill our ability to come into court. Well, OK. My point is you can't give an answer based on the facts of case A that tell you what's going to happen in the future cases because it's incredibly fact dependent. Well, in this particular instance, though, all the questions were there. And what will burden Toplaco in the future is if the district court's decision is reversed, then Toplaco, before it uses the Creek Nation courts, which get funding on behalf and as a part of Toplaco's headcount, Toplaco would be burdened with the decision of do we go into the Creek Nation courts and assume a possible delay of 16 years, let's say. And, you know, that's a decision we make before we even begin to raise the issue. I mean, in all honesty, in the merits of this case, the question of the dangerousness or problems with Nathan Anderson were resolved 58 days after the lawsuit was filed in the tribal court. When Toplaco on August 8, 2007, filed a notice of internal resolution. And at that point, if it's confronted in the future, and I'll give you an example. Just about October 1st, Nathan Anderson announces in the Muskogee newspaper that he's going to, that Toplaco is going to hold an election. He called himself a Toplaco spokesman. I'm not going to go into this with any great detail, but if Toplaco was to go into the Creek Nation court and, again, wrestle with Mr. Anderson over this issue, and there's some possibility of response, cross-claims or whatever, they have to decide do we do this and this is delayed and we run into this problem. I might say, though, that after consultation with the Creek Nation and, of course, with counsel, we resolved that issue because they were going to provide a space for him for this meeting. They withdrew that. The newspaper issued a correction. But if we had to sue him again, the first thing that we consider is not whether we have a cause of action against him, but do we want to go into court where we would not be allowed to withdraw our waiver or consent to sovereign immunity? Well, and my point is you have no idea whether you can withdraw it, even if you get a ruling in this case, because it will be dependent upon what has happened in the current case. In this particular case, the district court entered an order that said that Toplaco had sovereign immunity, Toplaco could consent to jurisdiction, and Toplaco could withdraw that consent under appropriate circumstances. Right. That's the holding of Beers. That's the holding of Iowa Tribe in this court. I mean, Iowa Tribe, of course, is this court, and those are standalone questions that give guidance in the future to anybody else. And there's nothing that dismisses those particular holdings from being precedent in the future. And so under the circumstances, the guidance that the district court gave in its decision will control Toplaco's ability to decide whether to waive sovereign immunity and avail itself of the Creek Nation courts, just like Beers does, just like Iowa Tribe does. And I might add that the whole idea that Toplaco can't withdraw its consent as a plaintiff, which was raised by the defendants as if that was some great difference, ordinarily a plaintiff has a greater control over its, as the master of its complaint, as to when it consents and whether it dismisses the case or whatever. But the district court in the tribal court, the district court in this instance issued a ruling that it had properly exercised jurisdiction over Toplaco all these years. And not only that, even though Toplaco had withdrawn its consent, the tribal district court said that, went ahead and assumed jurisdiction and decided the case. If it did not have jurisdiction and Toplaco's consent was good, if it did not have jurisdiction at that point, it's supposed to announce the fact that it doesn't have jurisdiction and dismiss the case at that point. But no, it assumed jurisdiction and ruled that Nathan Anderson was no longer a threat to Toplaco. And that was an assumption of jurisdiction contrary to the very rule that we've been talking about. The question is whether, that this is a live case. And the federal district court properly found that it was a live case. Counsel, can I ask you about the district court's analysis here, which skipped over, it seems, the question of subject matter, jurisdiction, and went to mootness, and didn't talk about Ex parte Young. Do you think that we have an obligation to do that here? We can't rely on the 2014 case to satisfy our own independent obligation to make sure that we have subject matter jurisdiction, right? Well, it's always an obligation of a court to decide that it has subject matter jurisdiction. And I'm not going to say that the district court necessarily skipped over it. But I do think that her analysis would be, if she adopted the view that we had, she said that they never decided the question. I said that they did decide the question. That was part of the briefing that I entered. They did decide the question, that is, the tribal district court. The Supreme Court affirmed it. And so we have a very clear rule of decision that affects Toplaco any time in the future that it wants to go into court. It's going to still be subject to that rule. And if they didn't give up the rule that Toplaco could not withdraw a consent once it's given after the remand in 2014, then I think it's fair to say they're never going to get it. And I think that that was subject matter jurisdiction because it addresses the issues of standing, that there was a live case, and Toplaco had a concrete interest in the resolution of this question. And so that is necessarily what you have in terms of subject matter jurisdiction. I might also add that the district court's decision, fairly characterizing the standard of review, is abuse of discretion as to the prudential issues. And it requires a very strong showing by the defendants to show that the district court abused her discretion when she made her decision about how she would treat the question of prudential mootness. And she made findings. I'm sorry. Well, you also have to have it be constitutionally not moot. Yes, ma'am. And the district court relied on the capable of repetition yet evading review exception to mootness by saying that this is an election case. That's wrong, isn't it? No, I don't think it's entirely wrong because it arose out of a case, but I think that she was very true to the idea of something that's capable of repetition yet evading review. Well, if it's not an election case, this issue could come up in any case, right? Yes. Any case where the town was the plaintiff. Yes. This case could arise. Just like the example that I gave, if we were to sue Nathan. But the most likely occurrence is going to be an election case. But that's not the test. The test isn't most likely occurrence. The test has to be that it is always incapable of determination during the time that the case would last. Well, under the law, there doesn't have to be a certainty of repetition. There just has to be the possibility of repetition. And capable of repetition would be satisfied if, of course, every time FAPLACO files a lawsuit in the Creek courts, which, as you've indicated, that's the one that basically the federal government has supported. Every time they do that, they must confront the issue that they would have to waive this. They would have to waive the ability to withdraw their consent. And that's an infringement on their sovereignty. And that is irreparable harm. On page 29. Can't that be litigated when it happens? Pardon? Why can't that be litigated when it happens in the future? I mean, how is it evading judicial review? It's evading judicial review just because it took 17 years for this case to come to this point where the defendants avoided this court's 2014 order. The court asked it to provide some explanation and some reason for why they were not following the Beers case and, of course, the Iowa Tribe v. Salazar case. Okay, well, couldn't you or the town have, I mean, we got an explanation of the delay. Couldn't the tribe have asked for a mandamus to have the court issue an order more timely? I just don't see how you cannot fully litigate this issue in a future case. Well, I mean, as the old saying goes, you know, attorneys have deadlines, but courts don't. And, you know, what was I going to do? Huh? What? Yes, sir. You know, there was a report filed with the federal district court quarterly, and that went on for years. And this was done with the knowledge of the Creep Nation's attorney and me. I generally prepared them. They okayed them. I filed it in the district court. Finally, after a while, the district court ordered me to file all of those in the previous 2013 case. And I got a question from the clerk when I did that, you know. But, you know, what was I going to do? They had already turned down two appeals, you know, which, of course, was completely inconsistent with Tlapalco's sovereign immunity. Twice I appealed. Twice it was rejected. And was I going to aggravate or, you know, sort of stir the pot by trying to file another motion? I mean, I tried to do what I could. Understood. Well, thank you. Your time has expired. Thank you, Your Honor. Counsel are excused. Do we have any rebuttal time? Looks like we're out of time. Can I steal a minute, Your Honor? Sure. You can have a minute. Thank you. Since you asked nicely. I'll make three quick points. First, in response to Judge Rossman, yes, absolutely, there's an ongoing obligation to assess whether there's still the basis for ex parte young jurisdiction. I'm not saying this by way of flattery. But in 2014, I think this Court got the issue exactly right. But facts have changed. There's no longer an exercise of jurisdiction. And with respect to this question that's still hanging out there, I think you're absolutely right, Judge Tinkovich, that can be addressed in a future case. There's no reason why it can't. And as Judge McHugh said, it's a very fact-specific question. So the guidance that the district court here provided is no guidance at all under appropriate circumstances. I don't see how that helps anyone in terms of this concern. The town's concern about what might happen in the future fits squarely within what the Supreme Court said in the Jackson v. Women's Whole Health Center case, which is that the concern of a litigant about being inhibited or chilled in future litigation is not a basis for ex parte young jurisdiction in this case. And then finally, with respect to the mootness exception for evading review, Judge McHugh is absolutely right. This is not an election dispute. The only basis for federal court jurisdiction here, and the Court said this in 2014, is to assess the federal question as to whether the Muscogee Creek towns were properly exercising jurisdiction over the town. That's the only question that this Court has authority to review. It does not sit as an appellate court of general review over tribal courts. And that issue is clearly not one that is inherently short in nature. In fact, there have been questions today about how long this case took to resolve. The case became moot because the Muscogee Creek courts ruled in favor of the tribal town. They gave the tribal town all the relief it sought. And for that reason, the case is moot, and there is no basis for ex parte young. Thank you very much. Thank you, counsel. You are now excused, and the case is submitted. The Court will be in recess until tomorrow morning at 9 o'clock.